PENNELL v. STATE.

Opinion delivered April 26, 1926.

1. INDICTMENT AND INFORMATION—ALTERNATIVE OR CONJUNCTIVE ALLEGATIONS.—Where an offense may have been committed in different modes and by different means, the indictment may allege such modes and means either alternatively or conjunctively.

2. FORGERY—INSTRUCTION.—Where the State's evidence in a forgery case tended to prove that there was a conspiracy between defendant and another whereby each of them actively participated in the commission of the crime, an instruction asked by defend-

ant that he could not be convicted unless he either committed the forgery himself or was present encouraging and abetting the forgery by the other was properly refused.

3. FORGERY—PERSON DEFRAUDED.—Where defendant was charged with forgery of a check signed by E. P. with intent to defraud the said E. P., proof that E. P. had previously overdrawn his account at the bank did not establish that the bank and not E. P. was the person intended to be defrauded.

Appeal from Washington Circuit Court; *W. A. Dickson*, Judge; affirmed.

*John Mayes* and *W. N. Ivie,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant and Mrs. J. B. Buckhorn were jointly indicted for forgery. Appellant alone was placed on trial, and was convicted, and has appealed. The first assignment of error for the reversal of the judgment is that the court erred in overruling a demurrer to the indictment. The indictment charged that "the said Clyde Pennell and Mrs. J. B. Buckhorn, in the said county of Washington and in the State of Arkansas, on or about the 7th day of November, 1925, did falsely and feloniously raise, alter, forge and counterfeit a certain paper writing, purporting to be a check, which said check is in words and figures as follows: 'Bank of Lincoln, Lincoln, Arkansas. Pay to the order of Mrs. J. B. Buckhorn $85.00. Eighty-five Dollars. Earl Pyeatte', with the fraudulent intent feloniously to obtain the possession of the money and property of Earle Pyeatte, against the peace and dignity of the State of Arkansas."

The statute under which the indictment was drawn reads as follows: "If any person shall forge or counterfeit a bank bill or note, or check or draft upon a bank, or the certificate of deposit of money therein of any bank or company incorporated by law in any part of the United States, or any indorsement thereon, or shall erase or alter the same, or any indorsement thereon, or shall tender in payment, utter, vend, exchange, barter or demand to have exchanged for money any such forged,

erased, altered or counterfeited bill, note, draft, check, or certificate of deposit, or the indorsement thereon, knowing the same to be forged, counterfeited, erased or altered, he shall, on conviction, be confined in the penitentiary not less than two nor more than ten years.'' Section 2463, C. & M. Digest.

The indictment charges an offense under this statute. It is true the indictment charges that appellant ''did falsely and feloniously raise, alter, forge and counterfeit a certain paper writing, purporting to be a check,'' but these acts are charged conjunctively, that is, that appellant did raise the check, did alter it, did forge it, and did counterfeit it, and under the statute quoted the offense could have been committed by altering the check, by forging it, or by counterfeiting it, and by § 3015, C. & M. Digest, it is provided that ''an indictment, except in cases mentioned in the next section, must charge but one offense, but, if it may have been committed in different modes and by different means, the indictment may allege the modes and means in the alternative,'' and this may be properly done by alleging the commission of the crime in different modes and by different means, conjunctively. *Gramlich* v. *State,* 135 Ark. 243; *Cox* v. *State,* 149 Ark. 387.

The indictment also appears to be direct and certain as regards, (1), the party charged; (2), the offense charged; (3), the county in which the offense was committed; and (4), the particular circumstances of the offense charged; and as these are the requisites required by § 3012, C. & M. Digest, to make a valid indictment, we hold this indictment good. *Huff* v. *State,* 164 Ark. 211.

The court gave, over appellant's objection, an instruction numbered 4, which reads as follows: ''If you find from the evidence beyond a reasonable doubt that in Washington County, Arkansas, and at some time within three years before the indictment was returned into this court, Clyde Pennell falsely and feloniously raised, altered, forged and counterfeited a certain check as set out and described in the indictment, with the felonious

and fraudulent intent to obtain the possession of the money or property of Earl Pyeatte, or if you find that Mrs. J. B. Buckhorn falsely and feloniously raised, altered, forged or counterfeited the check set out and described in the indictment, with the felonious intent to obtain the personal property and money of Earl Pyeatte, and that the defendant was then and there present aiding, abetting and assisting her so to do (or if you find that Clyde Pennell and Mrs. J. B. Buckhorn were acting and conspiring together in the alleged altering, forging and raising of said check for the purposes aforesaid, and each participated in some part thereof for a common purpose), and with the felonious intent to obtain possession of the money or property of Earl Pyeatte, then you should find the defendant guilty as charged in the indictment, and assess his punishment at imprisonment in the penitentiary for not less than two nor more than ten years. If you fail to so find, you should acquit.''

This instruction was objected to upon the ground that, although appellant was indicted as a principal, the instruction authorized his conviction, although he was absent, if he had conspired with Mrs. Buckhorn to commit the crime.

We think the instruction is not open to this objection. The testimony on the part of the State was to the effect that Mr. Pyeatte had loaned appellant $5, the loan being made by drawing a check to appellant's order for $5. Mrs. Buckhorn testified that appellant erased the name of the payee and of the amount of the check, and that, after this was done, she filled in her own name as payee and wrote $85 in words and figures into the face of the check as the sum for which it was payable, and that she did this after discussing with appellant the amount. for which the check should be drawn, and that she gave appellant a part of the money.

Appellant testified that Pyeatte told him he wanted to give Mrs. Buckhorn $5, but did not want to make the check payable to her order, and, to avoid doing this, the check was made payable to appellant's order, and was

for $5, and that he delivered the check to Mrs. Buckhorn in the condition in which it was written and signed by Pyeatte. Appellant did not testify that he indorsed the check, and there is no explanation on his part as to how he expected Mrs. Buckhorn to get the money on an unindorsed check payable to his order. According to appellant's testimony, he had no guilty connection with the crime, but Mrs. Buckhorn testified that it was appellant who erased the name of the payee and the amount of the check. If he did this with the intent to defraud Pyeatte, he was guilty as charged, and it would be immaterial whether he was present when Mrs. Buckhorn filled in the erasures or not. If, as a result of a conspiracy to defraud Pyeatte, appellant had made certain erasures, thereby altering the check, and Mrs. Buckhorn thereafter filled in the items erased, each was guilty of forgery, and both were properly charged as principals, although Mrs. Buckhorn may not have been present when appellant made the erasures, and appellant may have been absent when Mrs. Buckhorn wrote into the check a different payee and a larger sum of money.

The instruction submits the two theories of the case —that presented by the testimony of Mrs. Buckhorn and that presented by the testimony of appellant. According to appellant's testimony, he had nothing to do with the transaction, and was not present when it was done, and that Mrs. Buckhorn made the erasures and then filled out the check. The first part of the instruction submits this issue, and tells the jury that, if Mrs. Buckhorn raised, altered, forged or counterfeited the check (that is, if she did it all by herself), with the felonious intent to obtain the personal property and money of Earl Pyeatte, "and that the defendant was then and there present aiding, abetting and assisting her so to do" then he was guilty as charged, although he did not touch the check while the altering, etc., was being done. The instruction then deals with the theory that Mrs. Buckhorn had not made the erasures, and, upon this theory, tells the jury that "if you find that Clyde Pennell (appellant) and Mrs. J. B. Buckhorn were

acting and conspiring together in the alleged altering, forging and raising of said check for the purposes aforesaid, *and each participated in some part thereof for a common purpose,"* and with the felonious intent to obtain possession of the money or property of Earl Pyeatte, the defendant was guilty as charged.

The instruction does not authorize the jury to convict the appellant (as he insists it does) upon the mere finding that he had conspired with Mrs. Buckhorn to defraud Pyeatte, although he had no part in the actual commission of the crime and was not present when it was done. But the instruction authorizes a conviction if there was a conspiracy, and, in pursuit of the common unlawful purpose, each participated in some part of the altering, forging, raising, or counterfeiting, whether the other was present or not when that participation occurred.

The court refused to give an instruction numbered 2, requested by appellant, reading as follows: "You are instructed that, before you would be authorized to convict the defendant in this case, you must find from the evidence, beyond a reasonable doubt, that the defendant Clyde Pennell either actually forged, altered, or raised the check in question, or was actually present aiding, encouraging and abetting the forging, raising or altering of said check at the time same was raised, altered or forged, if you find same was forged, raised or altered, and, unless you so find, your verdict should be for defendant."

This instruction would be appropriate in an ordinary case, but is not applicable to the facts of this case. It would have required the jury to find, before convicting appellant, that he either forged the check himself, or that Mrs. Buckhorn had done so, and that he was present, aiding, encouraging and abetting her while she did so, and takes no account of the theory of the prosecution that both Mrs. Buckhorn and appellant participated in the crime, each performing a separate part of it.

The instruction given by the court more correctly and accurately declared the law, and there was therefore

no error in giving instruction numbered 4 and in refusing to give instruction numbered 2.

The cashier of the bank on which the check was drawn and who paid it upon presentation testified that Pyeatte's account at the bank was overdrawn $8.25 when the check was presented and cashed, and upon this testimony an instruction was asked which would, in effect, have directed a verdict in appellant's favor, upon the theory that, as Pyeatte had no money in the bank with which the check could be and was cashed, it was the bank, and not Pyeatte, who was defrauded. This instruction was properly refused. The bank, of course, charged the check to Pyeatte's account, and he became liable therefor to the bank, although the payment of the check increased the amount of Pyeatte's overdraft.

There is no question about the altering and raising of the check, and the real question is whether appellant was concerned in these acts. He testified that he had nothing to do with the transaction except to deliver the check, unchanged in any respect, to Mrs. Buckhorn. She testified that appellant made the erasures, and, if he did this with the intent to defraud Pyeatte, he is guilty as charged, although Mrs. Buckhorn's part was performed in appellant's absence, a fact which she denied, her testimony on this point being that she and appellant discussed the amount for which the check should be made payable, and appellant suggested that it be made for enough, and that, pursuant to this suggestion, she made it for $85, and that this was done in appellant's presence, and that they later divided the money thus obtained.

We find no prejudicial error, so the judgment is affirmed.

HART, J., dissents.